UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEPHANIE PICKERING and TERRY A.
O'KEEFE,

          Plaintiffs,

v.

BANK OF AMERICA HOME LOANS; BANK
OF AMERICA, N.A.; QUALITY LOAN
SERVICING CORP. WASHINGTON;
MORTGAGE ELECTRONIC REGISTRATION
SYSTEM ("MERS"); and DOES 1-10,
Inclusively,

          Defendants.

Case No. 2:15-cv-01983-RSM

ORDER DENYING BANA'S MOTION
TO ENFORCE SETTLEMENT
AGREEMENT AND GRANTING
BANA'S MOTION FOR SUMMARY
JUDGMENT

## I.      INTRODUCTION

       This matter comes before the Court on Defendant Bank of America, N.A. ("BANA")'s

Motion to Enforce Settlement Agreement and Motion for Summary Judgment, Dkts. #91 and #93.

Plaintiff Stephanie Pickering, ostensibly on behalf of both Plaintiffs, opposes these Motions.[1]

Ms. Pickering also moves for discovery under Rule 56(f).[2]  Dkt. #97.  For the reasons set forth

below, the Court DENIES BANA's Motion to Enforce Settlement Agreement, DENIES Ms.

---

[1] The Court notes that Plaintiff O'Keefe has not signed the Responses to BANA's Motions.  *See* Dkts. #97 and #99.
[2] Such relief is now found under Rule 56(d).

ORDER DENYING MOTION TO ENFORCE
SETTLEMENT AGREEMENT AND GRANTING
MOTION FOR SUMMARY JUDGMENT   - 1

Pickering's Motion for discovery under Rule 56(d), and GRANTS BANA's Motion for Summary Judgment.

## II.    BACKGROUND

### A. Factual Background

On April 24, 2009, Plaintiffs executed a note with Golf Savings Bank memorializing Plaintiffs' refinancing of a prior loan covering real property located at 1720 S. 3rd Street in Mount Vernon, Washington. Dkt #94-1 at 2–4. The Loan was secured by a Deed of Trust identifying Plaintiffs as the borrowers and Golf Savings as the lender. *Id.* at 7–15.

On July 1, 2009, BAC Home Loans Servicing, LP ("BACHLS") sent a letter to Plaintiffs informing them that the Loan was being serviced by BACHLS and that BANA was the new creditor. *See id.* at 19–20. On July 1, 2011, BACHLS merged into its parent company, BANA, which continued to service Plaintiffs' loan. *See id.* at 22–25.

Plaintiffs began experiencing a financial hardship in 2009 and succumbed to this hardship in or around July 2011. *See* Dkt. #61, ¶ 8. Plaintiffs last made a payment on their Loan on March 13, 2012. *See* Dkt. #94 ("BANA Decl."), ¶¶ 8, 9.

On December 28, 2013, BANA sent Plaintiffs a letter advising that before BANA could determine Plaintiffs' eligibility for assistance under FHA programs, both Plaintiffs were required to complete, sign, and return an enclosed Request for Mortgage Assistance ("RMA") and provide the required documents on the Document Checklist included with the letter. Dkt #94-2 at 2–19. On January 2, 2014, Plaintiffs submitted an RMA, Hardship Affidavit and an IRS Form 4506-T, Request For Transcript Of Tax Return. *Id.* at 21–26.

On January 21, 2014, BANA sent Plaintiffs a letter acknowledging receipt of the above materials and advising Plaintiffs that it was reviewing the information to confirm that all required documentation had been submitted. *Id.* at 28. When asked later about the financial information

contained on the January 2, 2014, RMA, Plaintiff O'Keefe testified at her deposition that "[I] don't know where this stuff came from" and that the financial information was "like made-up numbers" and that she did not remember receiving disability while the RMA suggests she did. Dkt. #95-1 at 108-10. Plaintiff O'Keefe testified that Plaintiff Pickering completed the form. *Id*.

On February 20, 2014, BANA sent Plaintiffs a letter denying their loan assistance request but permitting a short sale. Dkt #94-2 at 31–36. Specifically, the letter informed Plaintiffs that they did not qualify for an FHA Formal Forbearance; an FHA Special Forbearance; an FHA Loan Modification; an FHA-HAMP Partial Claim Only; FHA-HAMP Modification Only; and/or an FHA-HAMP Modification With Partial Claim for the specific reasons set forth in the letter. *Id.* Plaintiffs were also advised that a deed-in-lieu of foreclosure program was not available for them. Finally, the letter informs Plaintiffs of the process for seeking a re-evaluation if they believed that BANA's evaluation was incorrect. *Id*.

On March 4, 2014, Plaintiff Pickering called and informed the BANA representative that she would be providing all new documents by March 7, 2014. *Id.* at 38. The next day, BANA sent Plaintiffs a letter advising them once again that they might be eligible for the FHA short sale program and that they needed to complete, sign and return the enclosed FHA authorization, acknowledgement form and third-party authorization, if applicable. Dkt. #94-3 at 2–9.

On July 10, 2014, Plaintiffs were sent another letter advising them of the results of BANA's evaluation of their loan assistance request. *Id.* at 11–15. In the July 10, 2014 letter, Plaintiffs were again advised that they did not meet the eligibility requirements for a FHA Formal Forbearance; a FHA Special Forbearance; a FHA Loan Modification; a FHA-HAMP Partial Claim Only; FHA-HAMP Modification Only; and/or an FHA-HAMP Modification With Partial Claim for the specific reasons set forth in the letter. The July 10, 2014, letter also informed Plaintiffs that they did not meet the eligibility requirements for the short sale or deed-in-lieu of

foreclosure programs program offered by the owner of their Loan. The July 10, 2014 letter advised Plaintiffs that if they believed that BANA's decision was incorrect, then they had 30 calendar days from the date of the letter to contact BANA and provide information demonstrating why the determination was in error. *Id.* Finally, Plaintiffs were informed that, if as of the date of the letter their Loan was delinquent (which it was), then within 30 days they had to either bring their Loan current or provide BANA with information showing that BANA's decision was incorrect. If not, BANA would proceed with foreclosure. *Id.*

On July 29, 2014, BANA sent Plaintiffs a letter advising them that BANA could not approve Plaintiffs' request for a short sale because BANA was unable to contact Plaintiffs. Dkt #95-1 at 57.

On September 24, 2014, BANA sent Plaintiffs a letter advising them that BANA had received their Borrower Response Package. Dkt #94-3 at 17. The next day, BANA sent Plaintiffs a letter requesting additional documents for the home loan assistance evaluation process. *Id.* at 20–21. Among other things, Plaintiffs Pickering and O'Keefe were asked to provide a copy of their most recently filed tax returns, a copy of their three most recent bank statements, and a completed RMA. *Id.* Plaintiff O'Keefe was asked to provide a copy of a disability policy benefit statement or proof of receipt of disability payments. *Id.* at 21.

BANA sent a letter to Plaintiffs on March 2, 2015, advising them that their Loan would be referred for foreclosure unless their account was brought current. *Id.* at 35–36. Plaintiffs were advised that BANA had been unable to contact Plaintiffs or BANA had not yet received a complete initial package/borrower response package. *Id.*

On May 19, 2015, BANA sent Plaintiffs a letter advising them that its records reflected that their pending application for loan assistance was incomplete and reminding them that on

September 25, 2014, Plaintiffs were sent a letter listing the specific documents needed for an evaluation. *Id.* at 39.

On June 9, 2015 BANA sent Plaintiffs a letter advising them that, although steps had been taken to begin the foreclosure process, it was not too late for them to get help and advising them that they could still be evaluated for alternatives to foreclosure. *Id.* at 42.

BANA submits letters dated June 18, 2015, July 18, 2015, August 18, 2015, September 17, 2015, October 17, 2015, November 17, 2015, and December 17, 2015, advising Plaintiffs that its records reflected that their pending application for loan assistance was incomplete and reminding them that on September 25, 2014, Plaintiffs were sent a letter listing the specific documents needed for evaluation. *See id.* at 46 – 67. Plaintiffs were advised that BANA was no longer actively reviewing their application for loan assistance. *Id.*

On September 1, 2015, Plaintiff Pickering called BANA and advised the BANA representative that she was seeking a loan modification with another company and that updated financial information would not be provided to BANA. Dkt #94-3 at 55.

To date, Plaintiffs still have not provided the financial documents requested by BANA in its September 25, 2014, letter. BANA Decl. at ¶ 41.

On August 6, 2015, BANA recorded an Appointment of Successor Trustee, appointing Quality Loan Servicing Corp. ("Quality Loan") as trustee. Dkt #96-1 at 17. A written Notice of Default was provided to Plaintiffs on August 14, 2015, wherein it was indicated that as of August 31, 2015 Plaintiffs were $72,469.02 in arrears. Dkt. #95-1 at 82–83. On October 1, 2015 Quality Loan recorded a Notice of Trustee Sale, scheduling a sale for January 29, 2016. Dkt #96-1 at 21–24.

**B. Procedural Background**

On December 16, 2015, Plaintiffs Stephanie L. Pickering and Terri A. O'Keefe brought this action against Defendants Bank of America Home Loans, Bank of America, N.A. ("BANA"), Quality Loan Service Corporation of Washington ("QLS"), Mortgage Electronic Registration System ("MERS") and Does 1-10 for mishandling of Plaintiffs' loan modification application. *See* Dkt. #1 at 1-5. On May 26, 2016, the Court granted a Motion to Dismiss filed by QLS giving Plaintiffs leave to amend their Complaint. Dkt. #18. Plaintiffs filed their first Amended Complaint on June 16, 2016. Dkt. #22.

Meanwhile, on March 24, 2016, Plaintiffs filed a parallel action in this court under case number 16-cv-427-JLR. This second action was brought against Defendants Bank of America Home Loans, BANA, and Does 1-5. Case No. 16-cv-427-JLR, Dkt. #1.

On May 27, 2016, BANA moved the Court to consolidate these cases, and on July 11, 2016, the Court granted this Motion. Dkt. #28. On August 18, 2016, the Court granted QLS' second Motion to Dismiss and dismissed all claims against them with prejudice. Dkt. #32. The Court then ordered Plaintiffs to file an amended consolidated complaint. Dkt. #37.

Plaintiffs filed their Amended Consolidated Complaint ("Complaint") in this matter on October 24, 2016. Dkt. #40. On January 24, 2017, the Court granted a motion by BANA to dismiss all claims. Dkt. #46. Plaintiffs appealed. On October 23, 2017, the Ninth Circuit affirmed in part, vacated in part, and remanded solely for the Court to address in the first instance Plaintiffs' allegations that BANA violated the Real Estate Settlement Procedures Act's ("RESPA") regulations in processing Plaintiffs' loan modification application. Dkt. #52.

After the parties filed a Joint Status Report, the Court issued a scheduling order setting trial for December 10, 2018. Dkt. #56. On January 31, 2018, Plaintiffs filed a Second Amended Complaint. Dkt. #61. On April 13, 2018, the Court dismissed all claims against Defendant MERS. Dkt. #69. On May 2, 2018, the Court dismissed certain of BANA's affirmative defenses.

Dkt. #72.  On August 8, 2018, and again on December 28, 2018, the Court issued revised scheduling orders at the unopposed request of BANA.  Dkts. #80 and #89.  Trial is now set for June 10, 2019, on Plaintiffs' RESPA claims.

### C. Settlement Discussions

On July 11, 2018, BANA deposed Plaintiff O'Keefe. Dkt. #92-1.  She stated in deposition that Plaintiff Pickering "handled everything with regard to this loan."  Dkt. #92-1 at 10–11. BANA was also scheduled to depose Ms. Pickering that day, but she did not appear, and her deposition was re-noted.  On August 8, 2018, Ms. Pickering began her deposition by acknowledging that she was in a bad emotional state, had been drinking that day, and was "drunk." Dkt. #92-1 at 6.  The deposition was called off.  That same day, Ms. Pickering orally demanded $15,000 for a settlement arrangement where Plaintiffs would dismiss the lawsuit and also vacate the subject property.  Dkt. #92 ("Kapaun Decl.") at ¶ 7.  On August 14, 2018, BANA sent an email to Plaintiff Pickering documenting her August 8, 2018, oral offer, rejecting Plaintiffs' demand, and counteroffering $12,000.  Dkt #92-1 at 35.  This email contained many of the details and terms the Court would expect from such an offer.  BANA sent a letter with the same terms to Plaintiff O'Keefe two days later.  *Id.* at 38.  Plaintiff Pickering requested more money and BANA counteroffered at $20,000.  On September 26, 2018 Plaintiff Pickering sent an email to BANA's counsel stating "[w]e accept the banks [sic] offer of 20K cash for keys with an exit date of January 16th, 2019.  This offer has not be [sic] rescinded and is still in effect. Send any paperwork needed to conclude this transaction. Stephanie Pickering and Terri O'Keefe." Dkt. #92-2 at 47.  On September 28, 2018, BANA responded that the offer was accepted and that "something to sign" was being sent to Plaintiffs in the next couple weeks.  *Id.* at 51. BANA sent written settlement agreements to Plaintiffs via email and regular mail.  *See* Dkt. #91 at 4.  On December 13, 2018, Plaintiff Pickering emailed BANA that they were rejecting the settlement

for $20,000 and instead requesting that they be able to stay in the home with a reduced payment. Dkt #92-3 at 26. The parties continued to email back and forth, disagreeing about whether the $20,000 settlement had been agreed to previously and whether it could be enforced.

## III.    DISCUSSION

### A. BANA's Motion to Enforce Settlement

A trial court has inherent authority to enforce a settlement agreement in an action pending before it. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994); *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). Before enforcing a settlement agreement, the trial court must conclude that no material terms are in dispute and that the agreement was not procured by fraud. *In re City Equities Anaheim, Ltd.*, 22 F.3d at 957.

Although it initially appears from the record that Ms. Pickering agreed on behalf of herself and Plaintiff O'Keefe to BANA's offer of $20,000, on closer inspection that offer was always conditioned on further terms being set forth in a subsequent written agreement. Plaintiff O'Keefe's email discusses the terms of the agreement only generally. BANA has not convinced the Court that all material terms had been agreed to, or that Ms. Pickering was authorized to settle this case on behalf of Plaintiff O'Keefe. The Court finds that promissory estoppel does not apply under the facts of this case, because it would be unjustifiable for BANA to rely on the promise of one plaintiff to settle this case for both without getting confirmation from both in writing, and because BANA has not demonstrated an injustice from the failure to reach settlement. *See Hilton v. Alexander & Baldwin, Inc.*, 66 Wn.2d 30, 31, 400 P.2d 772 (1965). Accordingly, this Motion will be denied.

### B. Plaintiffs' Motion for Rule 56(d) Discovery

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or

deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).  A party seeking relief under Rule 56(d) must show "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion."  *State of California ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).  "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists" and that it would prevent summary judgment.  *Conkle v. Jeong*, 73 F.3d 909, 914 (9th Cir. 1995).

This is not a case where summary judgment is sought at the outset or prior to the close of discovery.  To the contrary, this is a case with a long procedural history and ample time for discovery between the parties.  After this case was remanded for the sole issue of Plaintiffs' RESPA claim, the Court set new deadlines for discovery and dispositive motions.  Deadlines for discovery and dispositive motions were extended.  More than a year passed.  The instant dispositive Motion from BANA was filed several months after the close of discovery.

Plaintiff Pickering's request for discovery under Rule 56(d) is based on the following: a) she was incarcerated at the time of her original deposition, b) she was admittedly "drunk" at her second deposition, and c) she "has not completed discovery" because "[s]he thought that window of opportunity had closed due to time lost during her incarceration," and because she thought she could not conduct discovery during settlement negotiations.  Dkt. #97 at 3–4.  Ms. Pickering also erroneously thought that the deadline for discovery had been extended by the Court when no such deadline was mentioned in the Court's Order.

The Court is not convinced by these arguments.  Plaintiff Pickering, indeed both Plaintiffs, have had ample opportunity to seek discovery in this case.  Ms. Pickering's short period of incarceration does not explain her failure to conduct discovery after her release.  None of the

above demonstrates diligence on the part of Plaintiffs. Furthermore, Ms. Pickering has failed to show that further discovery would uncover specific facts that would prevent summary judgment.

### C. Legal Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### D. Analysis on Motion for Summary Judgment of RESPA Claim

The only remaining claim in this case is against BANA under RESPA and related regulations. RESPA is a consumer protection statute enacted by Congress to curb abusive practices in the real estate market. *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665 (9th Cir. 2012). RESPA authorizes the Consumer Financial Protection Bureau ("CFPB") to enact

regulations that advance RESPA's purpose. 12 U.S.C. § 2617(a). The CFPB enacted Regulation X. Among other things, Regulation X obligates mortgage loan servicers to take certain steps to evaluate a borrower's candidacy to receive a loan modification when a borrower submits a "complete loss mitigation application." 12 C.F.R. § 1024.41(b)(1).

Plaintiffs first allege that BANA violated 12 C.F.R § 1024.41 by failing to advise them of available loss mitigation options after they submitted their Loan modification application and that BANA failed to provide them a denial letter notifying them of their right to appeal from any decision. *See* Dkt. #61, ¶¶ 18-21.

BANA argues that RESPA took effect on January 10, 2014, and that the Court should focus only on actions as of that date. Dkt. #93 at 11 (citing *Schroeder v. Nationstar Mortg., LLC*, No. 16-1561-RAJ, 2017 WL 2483248 at * 2 (W.D. Wash. June 08, 2017). BANA walks through the various letters and communications between the parties as stated above, arguing that BANA complied with RESPA's requirements of evaluating the borrowers for all loss mitigation options and providing notice of determinations. *Id*. 11–13. BANA sent more than ten letters following up with Plaintiffs to obtain requested documents or information. BANA points out that it was Plaintiff Pickering who informed BANA on September 1, 2015, that Plaintiffs would provide no updated financial information and would seek a loan modification with another company. BANA has presented adequate evidence of compliance with the above RESPA regulations.

BANA maintains that Plaintiffs' sole remaining issue is whether BANA violated 12 C.F.R. § 1024.41(g) by "dual tracking" their Loan. This is consistent with the Court's understanding of Plaintiffs' claims as stated in their Second Amended Complaint. *See* Dkt. #61 at ¶¶ 21–22. BANA asserts that the evidence on summary judgment, including letters which Plaintiffs acknowledge receiving, prove that Plaintiffs did not have a complete loan modification pending when non-judicial foreclosure commenced.

BANA argues that because Plaintiffs presented no facts, let alone specific facts, in opposition to the evidence above, there are no genuine issues of material fact. The Court agrees. BANA has provided the evidence that it complied with the cited regulations at issue—by providing proper notice to Plaintiffs of loan modification determinations, options available to them, and notice of foreclosure proceedings at a time when the loan modification application was incomplete. The Court cannot rely solely on Plaintiffs' allegations contained in the Second Amended Complaint. Allegations are not evidence. By failing to present evidence or argument in response to this Motion, Plaintiffs have failed to make a "sufficient showing" on an essential element of their case with respect to which they have the burden of proof. *See Celotex, supra.*

Given the record before it, and Plaintiffs' failure to contradict BANA's substantive arguments or point to any evidence contrary to the letters and other communications cited by BANA, the Court concludes that BANA did not violate RESPA with respect to this loan, and grant summary judgment dismissal of Plaintiffs' remaining RESPA claims.

## IV.    CONCLUSION

The Court, having considered the parties' briefing, the declarations and exhibits in support thereof, and the remainder of the record, hereby finds and ORDERS:

1) Defendant BANA's Motion to Enforce Settlement Agreement, Dkt. #91, is DENIED.

2) BANA'S Motion for Summary Judgment, Dkts. #93, is GRANTED.

3) Plaintiff Pickering's Motion for Discovery under Rule 56(f), Dkt. #97, is DENIED.

4) All of Plaintiffs' remaining claims in this case are dismissed with prejudice.

5) All other pending Motions are stricken as moot. This case is CLOSED.

Dated this 10th day of May 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE